IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **ALLEN LEE GODFREY, SR.,** ) | CASE NO. 7:13CV00454 |
| ) | |
| **Plaintiff,** ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| ) | |
| **OFFICER D. R. FAULKNER,** *et al.* ) | By: Norman K. Moon |
| ) | United States District Judge |
| **Defendants.** ) | |

Allen Lee Godfrey, Sr., a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that during his arrest, the defendant police officers used excessive force against him or failed to intervene to prevent such force. Defendants Faulkner, McNiff, Loureiro,[1] and Anderson have filed motions for summary judgment, to which Godfrey has responded.[2] After reviewing the record, I find genuine issues of material facts in dispute that preclude summary judgment.

---

[1] Godfrey identified this defendant as Officer Loverio, and this spelling is also reflected on the court's docket. Defendants' briefs, however, indicate that the officer's actual name is Loureiro. In this opinion, I will refer to this defendant as Loureiro.

[2] Although both parties have filed numerous nondispositive motions and responses, I find the matters at issue on summary judgment to be ripe for disposition. Given Godfrey's *pro se* status, I have reviewed all of his submissions, along with defendants' motions, affidavits, and video footage, and I have determined that Godfrey's motion for default judgment (Docket No. 104) against Defendant Loureiro must be dismissed as frivolous. Contrary to Godfrey's assertions, this defendant filed a timely answer to the complaint and was not personally directed to file an affidavit in this action. Defendants' motions to strike Godfrey's responses to defendants' answer (Docket Nos. 41 & 71) will also be dismissed as frivolous, given Godfrey's right to respond to defendants' request at the end of their answer for dismissal of the complaint.
   Although the status of the parties' discovery interactions is not clear from the record, I find no reason that such matters should delay consideration of the summary judgment motions. Contrary to Godfrey's assertions, this case is exempted from the pretrial disclosure requirements of Rule 26, and defendants have made valid objections to Godfrey's requests for admissions and interrogatories. Therefore, I will deny all pending motions regarding discovery, direct defendants to produce all existing video footage, and set a timeline for additional discovery in preparation for trial.
   Defendant Perkins' motion to dismiss and related motions will be addressed by a separate opinion and order.

## I. GODFREY'S ALLEGATIONS

In his complaint and other submissions,[3] Godfrey alleges this sequence of events related to his claims. On December 30, 2011, he was resting in his vehicle in a Roanoke Kroger store parking lot, when a person who did not identify himself (Officer Faulkner of the Roanoke City Police Department) dragged him from the vehicle onto the pavement. While Godfrey screamed for help, Faulkner smashed Godfrey's face, head, and body into nearby parked cars, knocking Godfrey temporarily unconscious. Faulkner's continued actions roused Godfrey to semi-consciousness. Godfrey then saw Faulkner trying to pull his firearm and reached for that firearm to prevent the officer from shooting him. Just then, Kroger customers joined the scuffle. The weapon stayed in its holster and, ultimately, Faulkner placed Godfrey in handcuffs.

Officer McNiff arrived shortly thereafter, and the two officers led Godfrey to the back of Faulkner's police car, where other officers had arrived on the scene, including a lieutenant. After Godfrey spoke to one of these officers, McNiff kneed Godfrey in his outer thigh, knocking him to the ground on his tailbone; pushed Godfrey's head hard against his chest, making it difficult for him to breathe; placed a knee in Godfrey's lower back; and squeezed the handcuffs tight against Godfrey's wrists, rubbing hair off his wrists and arms. McNiff also twisted Godfrey's neck and pressed his knee against Godfrey's back to spin him down onto his stomach on the pavement, wearing only his boxers (officers had pulled off his other clothes at some point). McNiff yanked Godfrey to his feet, only to knee him back to a sitting position, while Godfrey, bleeding, screamed in pain. Godfrey alleges that Faulkner did not try to stop McNiff's abuse, and that a police sergeant and lieutenant heard and ignored Godfrey's pleas for them to make that abuse stop.

---

[3] (*See, e.g.*, Godfrey Declaration, Docket No. 55-2.)

2

Case 7:13-cv-00454-NKM-RSB   Document 116   Filed 01/23/15   Page 2 of 10   Pageid#: 735

Paramedics arrived on the scene. Officer Loureiro, wearing gloves, grabbed and smashed Godfrey's face repeatedly against the side of a car, knocking out a tooth filling and chipping several other teeth. Loureiro then held Godfrey's face against the car with a "jaw lock" while the paramedics looked at Godfrey and put a facemask on him. McNiff and Loureiro threw Godfrey belly-down on the pavement, then yanked him up and moved him to a more secluded area of the parking lot. McNiff kneed Godfrey, knocking him to his knees. Moving behind Godfrey, McNiff then grabbed Godfrey's forehead and pulled back hard, wrenching Godfrey's back and twisting his neck, and causing him to scream in pain. Loureiro placed a gloved hand over Godfrey's mouth. Sgt. Anderson, instead of stopping the officers' actions against Godfrey, moved to push Kroger customers away to prevent them from taking photos of the proceedings with their phones. Ultimately, officers led Godfrey to a police vehicle and transported him to the police department.

The defendant police officers' affidavits describe these events in quite a different light. They assert that Faulkner reasonably suspected Godfrey of committing a crime, ordered him out of the car, and when he did not comply, physically removed and handcuffed him, while Godfrey physically resisted being restrained and then attacked the officer and reached for his gun. Defendants also assert that Godfrey continued to be combative, spat and made verbal threats, toward the officers until he was removed from the scene. Defendants' evidence includes video footage of the incident from the Kroger store's surveillance video camera and from the in-car video recorders of two different police cruisers; court orders convicting Godfrey of grand larceny of the truck, assaulting a police officer, and trying to take the officer's gun, based on this incident; and numerous affidavits from police officers and citizens on the scene, describing Godfrey's continued struggle with the officers.

In response to defendants' motions, Godfrey submits his own declaration and a letter prepared by Shaheed Omar, who witnessed part of the incident—both of which reiterate Godfrey's allegations that the officers used unnecessary force against him, particularly after he was handcuffed. Godfrey states that he cried out in pain and begged for help, that he did not resist or spit at anyone, and that if he squirmed, such movements were an involuntary reaction to the pain the officers' actions caused him.

I have carefully reviewed the relevant video provided on summary judgment. The soundless video footage from the Kroger store's surveillance camera shows Faulkner's police vehicle drive past a dark pickup truck in the foreground. Faulkner approaches the truck's cab and stands at the driver's window, while movement is visible inside the cab. After several minutes, the pickup rolls slowly forward and off to the right. Then, two individuals can be seen, struggling, bumping into two nearby parked cars and then to the pavement. Suddenly, the officer in his dark uniform is underneath the other individual in lighter clothing, both visibly struggling. Within seconds, other people are seen running from the store to join in the struggle, which continues for a couple minutes, gradually calming. Then, a second police cruiser arrives, and an officer runs out to assist his colleague. Together, they pull the now-handcuffed driver to his feet and escort him off to the left, out of view of the camera.

Video footage shot by Faulkner's in-car camera from behind the pickup shows the same basic sequence of events, also without audio. After standing at the side of the cab for a few minutes, Faulkner opens the driver's door, and it is yanked closed. He opens it again and pulls the driver out of the vehicle and off to the left, out of view of the camera, as the truck rolls slowly away. The officer's uniformed back comes briefly into view a couple times and disappears again, and then, several seconds later, the officer stumbles backward into the camera

4

view and falls to the pavement. A shirtless individual runs after and dives on top of the officer, as they both appear to reach for and struggle over the officer's firearm. Then other people come running up, pull the shirtless individual off the officer, and help the officer hold him down on the pavement while the officer applies the handcuffs. McNiff arrives, he and Faulkner lift the cuffed individual to his feet, and lead him off to the right, out of the camera's view.

A third video clip from another officer's in-car camera picks up more than ten minutes later, shortly before midnight. It shows Godfrey (now without shirt or pants, still handcuffed) seated on the pavement. A police officer squats behind him, apparently holding his arms, while an officer from the ambulance squats in front of Godfrey and places a mask over his nose and mouth. Godfrey repeatedly tries to shake the mask off and squirms away from the officer holding his arms. Three times, the officer pushes and holds Godfrey forward toward his knees. Other officers stand and watch. During this four-and-a-half-minute sequence, Godfrey appears to be speaking, but the footage does not include audio. Finally, the officers help Godfrey to his feet and escort him off camera.

## II. STANDARD OF REVIEW

A court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

5

In reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004); *see also Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991) (at the summary judgment stage, "[i]t is not [the court's] job to weigh the evidence, to count how many affidavits favor the plaintiff and how many oppose him, or to disregard stories that seem hard to believe"). Detailed factual allegations in a verified, *pro se* complaint may be sufficient to withstand a motion for summary judgment with supporting affidavits containing a conflicting version of the facts. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) ("[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge.") (citing *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979)).

### III. DISCUSSION

Claims of excessive force during a search or seizure are analyzed under the Fourth Amendment,[4] which applies an objective "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Three factors must guide the objective reasonableness inquiry: (1) "the severity of the crime"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) whether the suspect is resisting arrest or attempting to flee. *Id.* at 396. A court must make "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397.

---

[4] When excessive force is alleged in the context of an arrest or investigative stop, as it is here, the protections of the Fourth Amendment apply. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989).

6

Officers who did not personally use force against Godfrey during the arrest may yet face § 1983 liability as bystanders who failed to prevent others from violating his rights.

> The concept of bystander liability is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them. . . . Therefore, if a bystanding officer (1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act, he may be deemed an accomplice and [be] treated accordingly.

*Randall v. Prince George's County, MD.*, 302 F.3d 188, 203 (4th Cir. 2002) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988) (observing that officer who stands by and does not seek to assist victim could be "tacit collaborator")).

Police officers are not required to perfectly interpret the situation, or to react perfectly to it. *See, e.g., Anderson v. Russell*, 247 F.3d 125 (4th Cir. 2001) (finding officers entitled to qualified immunity after shooting unarmed suspect, because officers reasonably believed that suspect might have been reaching for a weapon). Rather, officers are entitled to qualified immunity against suits for damages if a reasonable officer facing the same situation would *not* have known that his actions violated plaintiff's clearly established constitutional right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Where there exists no genuine dispute of material fact, the objective reasonableness of a particular use of force is an issue of law for the court. *See, e.g., Scott v. Harris*, 550 U.S. 372, 378-79 & n. 5 (2007) (holding that video recording of plaintiff's encounter with police "sp[oke] for itself" and established the absence of any genuine dispute of material fact bearing on objective reasonableness). When resolution of the qualified immunity question and the case itself both depend upon a determination of what actually happened, however, summary judgment is not proper. *Buonocore v. Harris*, 65 F.3d 347, 359 (4th Cir. 1995). Accordingly, the district

court should not grant summary judgment where "there remains any material factual dispute regarding the actual conduct of the defendants." *Id.*

Taking the evidence in the light most favorable to Godfrey as the nonmovant, I find that genuine issues of material fact remain in dispute regarding his allegations of unreasonable force. Godfrey pleaded guilty in state court to assault and battery of Officer Faulkner and going for the officer's gun, and the video footage is consistent with these offenses. Godfrey's admission to these offenses, however, does not preclude a finding from the evidence, including the video, that Faulkner used unreasonable force against Godfrey at some point before handcuffing him, or that Faulkner and other officers used unreasonable force against Godfrey later, while he was handcuffed. The video footage in the record, which Godfrey claims has been edited, is not so entirely inconsistent with Godfrey's account of the officers' conduct that I can completely discount his version of events. *See, e.g., Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (where the record contains an unchallenged videotape capturing the events in question, the court must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape).

Moreover, the video cameras did not record all events. For example, the record does not include any audio recording of the parties' comments at the truck window or during the struggle after Faulkner removed Godfrey from the pickup. Gaps of time also exist where the parties are completely off camera or for which no video footage has been submitted. The parties' accounts in affidavits and declarations are in sharp dispute—the officers say Godfrey was combative and making verbal threats, while Godfrey says he was begging for help, was not combative, and was squirming and crying out in pain because of the officers' abusive actions. For these reasons, I find the evidence to be "such that a reasonable jury could return a verdict for the nonmoving party" on Godfrey's allegations of unreasonable force. *Anderson*, 477 U.S. at 248. Because

8

genuine issues of material fact thus remain in dispute, defendants Faulkner, McNiff, and Loureiro have not established that they are entitled to summary judgment on the ground of qualified immunity or on the merits of Godfrey's excessive force claims. *Id.*

I also find that the defendants' motion for summary judgment must be denied as to Godfrey's bystander liability claims. Taking Godfrey's factual allegations and the video footage now in the record in the light most favorable to him, I find genuine issues of material fact in dispute as to whether Loureiro or Anderson saw McNiff, Faulkner, or others using unreasonable force against a handcuffed Godfrey, heard Godfrey's pleas for help, and could have stopped the use of force, but failed to do so. *Randall*, 302 F.3d at 203.

## IV. CONCLUSION

For the stated reasons, I conclude that defendants' motions for summary judgment are ripe for consideration and must be denied. An appropriate order accompanies this memorandum opinion.

I will also grant in part Godfrey's motion to amend (Docket No. 88) to add two new defendants, previously identified as John Does.[5] Godfrey alleges that Lt. Ratcliffe is the John Doe police lieutenant whom he begged for help while McNiff was physically abusing him while he was handcuffed. Godfrey also seeks to substitute Roanoke City Police Officer Roszak for Defendant John Doe, but does not identify any specific action(s) that this officer undertook in violation of his rights. Because the allegations against Lt. Ratcliffe are clear in the complaint, I will grant the motion to amend to add him as a party in place of Lt. John Doe. I will, however, deny the motion to amend in all other respects.

---

[5] To the extent that Godfrey seeks to amend to add or to reinstate claims against the police department itself, this motion is denied, because his submissions as a whole fail to state any actionable § 1983 claim against this defendant.

9

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to plaintiff.

ENTER: This  23rd  day of January, 2015.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE